UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Dawn L.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 2:20cv348 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability, Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(a), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since June 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: polysubstance abuse, attention deficit disorder (ADD)/attention hyperactivity deficit disorder (ADHD), major depressive disorder, generalized anxiety disorder, alcohol abuse disorder, bipolar disorder, bipolar affective disorder, and major neurocognitive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that in regards to the claimant's application for supplemental security income, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, and repetitive tasks; make simple work-related decisions; and work in two-hour blocks of time. The claimant can occasionally interact with supervisors and coworkers, incidental to the work being performed, working more with things rather than people. The claimant can have no contact with the public. The claimant can respond appropriately to occasional, gradually introduced changes in a routine work setting. The claimant would require one reminder per day to perform tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 21, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 650-661).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on June 14, 2021. On July 26, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on August 9, 2021. Upon full review of the record in this cause, this Court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff protectively filed a Title II application for a period of disability and DIB on April 25, 2013. (Tr. 729.) She filed a Title XVI application for SSI on May 25, 2016. (*Id*.) In both applications, she alleged disability beginning June 15, 2010. (*Id*.) The Title II claim was denied initially and upon reconsideration. (*Id*.) The Title XVI claim moved to the hearing level. (*Id*.) ALJ Matthew Johnson issued an unfavorable decision. (Tr. 729-37.) The case was remanded by this Court on February 14, 2018 (No. 2:17cv24-PRC). (Tr. 648.) Following an additional hearing, ALJ Janet Akers issued an unfavorable decision. (Tr. 648-61.) Plaintiff alleges disability due to: polysubstance abuse; attention deficit disorder (ADD)/attention deficit hyperactivity disorder (ADHD); major depressive disorder; generalized anxiety disorder; alcohol abuse disorder; bipolar disorder; degenerative disc disease; chronic back pain; and a major neurocognitive disorder. (Tr. 257, 650-51.)

In support of remand, Plaintiff first argues that the ALJ failed to properly evaluate the medical opinion evidence. In October of 2019, Plaintiff met with Robert Coyle, Ph.D., for a psychological evaluation as recommended by counsel. (Tr. 1356-63.) Following the evaluation, Dr. Coyle provided a summary detailing Plaintiff's performance. (Tr. 1362.) Dr. Coyle noted that Plaintiff was "particularly weak in her store of general information and was slow in her psychomotor processing speed." (*Id.*) Her performance on memory testing was "even weaker," and showed a "marked memory impairment that [was] consistent with an organic mental disorder." (*Id*.) Plaintiff's reading skills ranged from a fourth to seventh grade level, and were

"markedly stronger" than her measured intelligence and memory functions. (*Id*.) Dr. Coyle determined that this performance suggested a "marked degree of organic dementia . . . of unknown etiology." (*Id*.) Plaintiff's general intelligence was estimated to have diminished by 15 to 20 quotient points from her premorbid status, based on her work history, reading scores, education, and Weschler test results. (*Id*.) Her adaptive behavior rating suggested inadequate activities of daily living for vocational programming. (*Id*.) Plaintiff had a marked weakness in her activities of daily living, with limitations in social functioning and communication skills. (*Id*.) Dr. Coyle noted that Plaintiff was markedly impaired by major depression with suicidal ideation. (*Id*.) She had a markedly high anxiety level. (*Id*.) Her prognosis was guarded. (*Id*.) Dr. Coyle determined that, pursuant to the Dictionary of Occupational Titles ("DOT"), Plaintiff's General Education Development was greater than Level 1 Reasoning Development, less than Level 1 Math Development, and less than Level 1 Language Development. (Tr. 1363.) These levels were lower than what was required for work in supported employment. (*Id*.) He assigned a GAF score of 40. Dr. Coyle concluded that Plaintiff was "no longer mentally and cognitively capable of gainful employment," and that her "past levels of cognition [would] not recover." (*Id*.)

       The ALJ afforded Dr. Coyle's opinion "no weight," and Plaintiff contends that the ALJ's explanation for rejecting the opinion was not adequate. (Tr. 658.) *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record[.]"). Plaintiff notes that the ALJ discounted Dr. Coyle's opinion because he was referred by Plaintiff's representative, (Tr. 658), a point which the Commissioner has failed to address in her response.  The Seventh Circuit has held that opinions requested by counsel should not be discredited on these grounds. *Hall v.*

*Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). The ALJ also rejected Dr. Coyle's opinion because it was based on a one-time examination. (Tr. 658.) This was a mistake of fact. Dr. Coyle's report states that he performed the evaluation on two separate dates – October 6 and October 9, 2019. (Tr. 1356.) He met with Plaintiff on three occasions. (Tr. 1358.) While the Commissioner claims that this was a "harmless error," this Court agrees with Plaintiff that the ALJ may have given more weight to Dr. Coyle's opinion if she had used accurate facts in her assessment. Plaintiff also points out that the ALJ did not apply this line of reasoning uniformly, as she did not discount the opinions of the State Agency doctors on these grounds, despite the fact they had never examined Plaintiff. (Tr. 657.)

The ALJ also discounted Dr. Coyle's opinion because it was inconsistent with an August 2019 treatment record that assessed Plaintiff's memory as "intact" with "distractible" attention and concentration. (Tr. 658, 1354.) The ALJ cited to another treatment note from Plaintiff's 6-day hospitalization in November of 2019, where her memory was described as "intact." (Tr. 658, 1510.) Plaintiff argues that it is unclear why these two medical records would be more persuasive than the evidence that was consistent with Dr. Coyle's opinion, which is set forth below. ALJs are not permitted to selectively cite from the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Plaintiff asserts that an individual like herself, who suffers from serious mental illness and is treated with powerful medications, is likely to have better and worse days. *Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008). *See also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."). Plaintiff argues that the ALJ should have explained why those two treatment records

7

were more indicative of Plaintiff's functioning than all of the favorable examinations (set forth below) that were consistent with Dr. Coyle's opinion. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[T]he ALJ erred in utterly failing . . . to explain the rationale for crediting the identified evidence over the contrary evidence.").

The Commissioner does not address Plaintiff's argument that the ALJ seemingly cited selectively from the record. The Commissioner also does not address Plaintiff's argument that her condition was not static. See *Lanigan v. Berryhill*, 865 F.3d 558, 564 (7th Cir. 2017) (recognizing that mental health symptoms can vary day-to-day); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The Commissioner identifies other evidence in the record that she argues supported the ALJ's conclusions that Plaintiff had moderate limitations. However, the ALJ did not rely on any of this evidence when discussing, and rejecting, Dr. Coyle's opinion. (Tr. 658.) This Court must confine itself to the reasoning articulated by the ALJ, pursuant to the *Chenery* Doctrine. *See e.g., Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (noting that upon judicial review, "a court must confine itself to the reasons supplied by the ALJ").

Plaintiff further contends that the ALJ also erred by failing to evaluate Dr. Coyle's opinion pursuant to the factors set forth in 20 C.F.R. § 404.1527. Opinions of examining physicians are generally afforded greater weight. 20 C.F.R. § 404.1527(c)(1). The Commissioner does not directly address Plaintiff's argument on this point. Rather the Commissioner cites to a variety of cases (most of them unpublished) where the Seventh Circuit held that the ALJ was not required to explicitly weigh or discuss each factor in 20 C.F.R. § 404.1527. However, one case that the Commissioner relies upon, *Schreiber v. Colvin*, states that the ALJ should make it "clear" that she was "aware of and considered many of the factors[.]" 519 Fed.Appx. 951, 959 (7th Cir.

8

2013). Here, the Commissioner has failed to demonstrate that the ALJ considered any of the factors. *See Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014) ("The ALJ here should have addressed these [404.1527] factors in her opinion to enable us to review whether she engaged in the correct methodology.").

Plaintiff also contends the ALJ erred by failing to assess the evidence that Dr. Coyle provided in support of his opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Dr. Coyle provided an interpretation of the results of his extensive psychological testing. (Tr. 1358-62.) For example, he noted that Plaintiff's full scale intelligence quotient was 72, which was suggestive of borderline general intelligence. (Tr. 1358.) He noted that Plaintiff had cognitive weaknesses in her long-term store of general information and had slow psychomotor speed. (Tr. 1359.) Compared to a random sampling of 100 individuals her same age, Plaintiff's intellectual ability equaled or exceeded only three individuals. (*Id.*) Plaintiff's performance on the Wechsler Memory Scale-IV revealed index scores in the 40's range, which corresponded with a severe memory impairment. (Tr. 1359-60.)

Plaintiff's performance on adaptive testing – which assessed "personal and social sufficiency" – revealed weaknesses in daily living skill or self-help functions. (Tr. 1360.) Dr. Coyle explained that Plaintiff was unable to give her current address. (*Id.*) Plaintiff reported a poor attention span. (*Id.*) Plaintiff estimated that she could focus for half an hour on entertaining materials, but could only focus for 15 minutes on more informative materials. (*Id.*) Dr. Coyle, however, determined that "objective testing suggest[ed] even less attending ability." (*Id.*) When

9

asked to show her right hand, Plaintiff presented her left hand and did not correct her error. (Tr. 1361.) On the Beck Anxiety Inventory Test, Dr. Coyle assessed a score of 55, which suggested that Plaintiff felt "unable to relax" and was "suffering from marked anxiety." (*Id*.) On the Beck Depression Inventory Test, Plaintiff scored a 52, indicating severe depression. (Tr. 1362.) Dr. Coyle diagnosed major depressive disorder, severe, with suicidal ideation, past suicide attempts, and prolonged recurrent episodes that did not fully remit. (Tr. 1363.) He also diagnosed a major neurocognitive disorder with behavioral disturbance of unknown etiology, but with suspected contributions from past alcohol and opiate abuse with multiple overdoses, with a major impairment of long- and short-term memory functions. (Tr. 1363.)

In further support of his opinion, Dr. Coyle observed that Plaintiff's grooming was "minimally adequate." (Tr. 1358.) She was a "poor historian" and "had general memory problems." (Tr. 1357.) Plaintiff engaged in tangential, off-topic rambling. (Tr. 1358.) Her affect was depressed and flat, and she broke into tears on multiple occasions. (*Id*.) Dr. Coyle observed: "Her level of consciousness was at a sleepy state due to poor sleep the nights before. She had to be told several times to alert herself or she would need to stand for the evaluation to continue." (*Id*.)

Plaintiff reported that her medication caused impaired concentration. (*Id*.) She failed to bring in a list of her medications despite being instructed and reminded to do so. (*Id*.) Dr. Coyle assessed Plaintiff's current reading level as "minimally functional." (Tr. 1361.) Plaintiff reported that her daughter came over daily to help her with her activities of daily living. (Tr. 1357.) She described getting lost easily in doctor's offices. (Tr. 1361.) She was not careful with sharp objects, and inadvertently cut herself with scissors and knives. (*Id*.) Her daughter helped her put

10

away clean clothes and put dirty clothes in the hamper. (*Id.*) Dr. Coyle noted that Plaintiff could be "easily cheated" and did "not advocate well for herself." (*Id.*) Thus, Plaintiff concludes that Dr. Coyle's testing results and own psychiatric observations lent ample support to his opinion, which should have been evaluated by the ALJ. 20 C.F.R. § 404.1527(c)(3).

Plaintiff further contends that the ALJ erred in failing to explain how she considered the other evidence in the record that was consistent with Dr. Coyle's opinion. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Other records reflected: tangential speech; slow speech or responses; irritability; anxiety; depression; suicidal ideation; impaired short-term memory; preoccupied thought process; restlessness; tearfulness; auditory hallucinations; guardedness; fearfulness; distractibility; impaired attention and concentration; hesitant speech; dysthymic affect; circumstantial thoughts; psychomotor retardation; hypophonic speech; and partial insight. (Tr. 400, 408, 411, 441, 462, 479-480, 482, 526, 542, 593, 628, 997, 1000, 1159, 1168, 1172, 1176, 1180, 1184, 1197, 1201, 1261, 1341, 1345, 1481.) Additionally, Plaintiff was hospitalized at least 11 times due to depression, anxiety, or suicidal ideation. (Tr. 407-08, 428, 444, 451, 459-80, 628-36, 990, 1018, 1445, 1023-33, 1367-71.)

Clearly, the ALJ erred in her evaluation of Dr. Coyle's opinion. It seems obvious from the record that the opinion was likely ignored because Plaintiff went to Dr. Coyle at the advice of her attorney. As noted, this is an improper basis upon which to reject the opinion. Additionally, the ALJ failed to discuss the 20 C.F.R. § 404.1527 factors, as detailed above. Thus, remand is required. If a new hearing is held, the ALJ is instructed to explicitly explain how they consider the 20 C.F.R. § 404.1527 factors.

11

The Court will next address Plaintiff's arguments regarding the ALJ's analysis of Dr. Sadek's opinion. In August of 2014 and May and June of 2015, treating psychiatrist Hisham Sadek, M.D., opined that Plaintiff continued to need outpatient treatment, because she "continue[d] to exhibit symptoms of an emotional disorder that interfere[s] with day to day functioning" and was "in need of medication management." (Tr. 525, 548, 550.) The ALJ afforded this opinion partial weight. (Tr. 658.) Plaintiff argues that the ALJ erred by failing to provide a "sound explanation" for discounting Dr. Sadek's opinions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ noted that Dr. Sadek's opinion was vague. (Tr. 658.) The ALJ did not cite to any authority that permitted her to reject the opinions because they were vague, and did not explain what additional information would have bolstered the opinion. Plaintiff points out that medical opinions are not required to be of any particular form to be accepted by an ALJ. *See House v. Berryhill*, 2018 WL 1556173, at *4 (S.D. Ind. Mar. 30, 2018) ("SSA does not restrict acceptable medical opinion source statements to any particular form, beyond reserving to the Commissioner opinions on issues dispositive of the ultimate administrative legal findings.").

The ALJ also found that Dr. Sadek's opinion was contradicted by the mental status examination from the same day, which showed euthymic mood, no signs of depression or elevation, normal speech, and intact language skills. (Tr. 658, 547, 549.) Plaintiff, however, argues that the treatment records from Dr. Sadek, as well as from other providers, were consistent with his opinion. The ALJ did not articulate why this single treatment record was more persuasive than the favorable evidence. As noted above, individuals with mental illness are likely to have better days, where their symptoms are less severe, and worse days, where their symptoms are more debilitating. *Punzio*, 630 F.3d at 710. Plaintiff contends that the treatment records that the

12

ALJ relied upon as evidence that contradicted Dr. Sadek's opinion reflected that Plaintiff's mental symptoms varied day-to-day. For example, on May 11, 2015, Plaintiff said: "Sometimes [I] feel like I'm all over the place and some days, I'm okay." (Tr. 547.) Then, on June 2, 2015, Plaintiff reported to Dr. Sadek: "This medication is just not working for me. I have some good days, but not enough[.]" (Tr. 549.)

In response, the Commissioner reiterates that the ALJ found Dr. Sadek's opinion to be vague. (Tr. 658.) However, the Commissioner does not acknowledge Plaintiff's argument that the ALJ never explained what was missing from the opinion or what additional information would have helped bolster the opinion. Nor has the Commissioner cited to any regulation that requires medical opinions to be in a specific form. The Commissioner also points to the ALJ's finding that the opinions were not supported by mental status examination findings on the same day. (Tr. 658.) The Commissioner cites to two treatment records from Dr. Sadek, one from May of 2015, and another from August of 2015. (Tr. 547, 549.) The Commissioner asserts that these two records constitute well-supported contrary evidence. However, Plaintiff cited to many more treatment records that were consistent with Dr. Sadek's opinion, including Dr. Sadek's own records. (Tr. 398, 524, 526, 400, 407, 408, 422, 462, 479-80, 482, 593, 601, 1010, 1026, 1159, 1168, 1172, 1176, 1180, 1184, 1193, 1334, 1345, 1358, 1362, 1510.) Neither the Commissioner nor the ALJ have adequately explained why two single treatment records would outweigh the evidence that was consistent with and supported Dr. Sadek's opinions. The Seventh Circuit has repeatedly held that ALJs are not permitted to selectively discuss the evidence or rely only on the evidence that favors a finding of non-disability. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Denton v. Astrue*, 596 F.3d 419,

13

425 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009).

Plaintiff also claims that the ALJ erred by failing to evaluate Dr. Sadek's opinion by the factors set forth in 20 C.F.R. § 404.1527. The ALJ did not discuss whether, or how, Dr. Sadek's treatment relationship with Plaintiff was considered. Treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). As such, these opinions generally merit more weight. (*Id.*) The ALJ failed to discuss the evidence that Dr. Sadek provided in support of his opinion. 20 C.F.R. § 404.1527(c)(3). As noted, Dr. Sadek's opinion was supported by his treatment records of Plaintiff. During Plaintiff's initial evaluation with Dr. Sadek, she described: irritability; feelings of sadness; difficulty staying asleep; an "uncomfortable feeling that her surroundings [were] not real"; feelings of restlessness; excessive worry; constant anxiety; and a history of multiple hospitalizations and suicidal ideation. (Tr. 524.) Dr. Sadek observed slow responses, hypomania, and irritability. (Tr. 526.) Dr. Sadek assessed a GAF score of 55, which corresponds with moderate symptoms or moderate difficulties in social, occupational, or school functioning.

Further, Plaintiff contends that the ALJ erred by failing to assess the other evidence in the record that was consistent with Dr. Sadek's opinion. 20 C.F.R. § 404.1527(c)(3). This evidence reflected that Plaintiff suffered from symptoms that interfered with her daily functioning. For example, doctors observed: intrusive behavior; anxious, depressed, or tearful mood and affect; tangential cognitive processes; slow or hesitant speech; crying with inappropriate laughter;

14

suicidal ideation; psychomotor retardation; impaired attention/concentration; impaired short-term memory; preoccupied or circumstantial thought processes; partial insight; inadequate fund of knowledge; blunt or flat affect; auditory hallucinations; difficulty remembering questions; and agitation. (Tr. 398, 400, 407, 408, 422, 462, 479-80, 482, 593, 601, 1010, 1026, 1159, 1168, 1172, 1176, 1180, 1184, 1193, 1334, 1345, 1358, 1362, 1510.) Additionally, the ALJ failed to recognize Dr. Sadek's specialization as a psychiatrist. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

This Court finds Plaintiff's arguments, as set forth above, to be well-taken and agrees that remand is required for a proper evaluation of Dr. Sadek's opinion.

Next, Plaintiff argues that the ALJ failed to properly assess the RFC. In remanding this matter previously, this Court instructed the ALJ to explain how she considered Plaintiff's shorter episodes of decompensation. (Tr. 770.) In the current decision, the ALJ found that Plaintiff had moderate limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself. (Tr. 651-52.) The ALJ stated that these moderate limitations were "primarily to account for the claimant's episodes of decompensation due to drug abuse as her mental status examinations consistently noted intact memory intact and/or no memory deficits in 2016, 2018, and 2019." (Tr. 652.) Plaintiff argues that the ALJ did not explain how these moderate limitations meaningfully accounted for Plaintiff's episodes of decompensation. Plaintiff also notes that the ALJ failed to recognize that not all of Plaintiff's episodes of decompensation were related to drug abuse, and that she had memory deficits in 2010, 2014, 2016, 2017, 2019,

and 2020. (Tr. 299, 401, 444-57, 459-69, 480, 593, 628-34, 693, 1167-68, 1249.)

The Seventh Circuit has recognized that "episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010). Plaintiff argues that she had many episodes of decompensation. For example, she presented for inpatient treatment or emergency treatment multiple times due to increased anxiety, depression, or suicidal ideation. (Tr. 407-08, 444, 451, 459, 628, 990, 1018, 1023, 1445, 1371.) Plaintiff strongly contends that the ALJ reversibly erred by failing to follow this Court's instruction to explain how she considered Plaintiff's episodes of decompensation.

The Commissioner asserts that the ALJ complied with this Court's instructions. The Commissioner cites to four pages of the ALJ's decision. (Tr. 654-58.) However, these pages do not contain any real analysis of Plaintiff's episodes of decompensation, and offer nothing but a summary. "A summary of evidence isn't the same as meaningful analysis." *Hollingsworth v. Saul*, 2020 WL 2731008, at *2 (N.D. Ind. May 26, 2020). *See also Joann P. v. Kijakazi*, 2021 WL 3076965, at *4 (N.D. Ind. July 21, 2021). The Commissioner also points to other evidence recited by the ALJ, but fails to articulate how these summaries constituted an analysis of Plaintiff's episodes of decompensation. (Tr. 652-59.) The Commissioner has failed to identify any portion of the decision that reflects the analysis demanded by this Court in its previous Order. Accordingly, the Commissioner's argument fails, and this Court will again remand for an explanation of how Plaintiff's episodes of decompensation were accounted for in the RFC.

As mentioned above, the ALJ found that Plaintiff would require one reminder a day to perform work tasks. (Tr. 653.) Plaintiff argues that the ALJ did not explain how only one reminder would accommodate Plaintiff's memory problems and that the evidence reflects that she would often require more frequent reminders in the workplace. For example, she was often described by doctors as distracted or preoccupied. (Tr. 482, 593, 601, 1168, 1172, 1193, 1345.) Dr. Coyle observed that Plaintiff was a "poor historian and had general memory problems." (Tr. 1357.) When meeting with Dr. Coyle, Plaintiff went to the wrong door on all three visits to the office. (Tr. 1358.) She was unable to find her way back to the examination room from the restroom without help from office staff. (Tr. 1361.) Dr. Coyle noted that Plaintiff forgot to bring a list of her medications despite numerous reminders. (Tr. 1358.) Dr. Coyle opined that Plaintiff had a marked memory impairment. (Tr. 136.) Plaintiff was "particularly weak in her store of general information and was slow in her psychomotor processing speed." (*Id.*) Other doctors described Plaintiff's memory as "impaired" or "short." (Tr. 480, 593, 1249.) Andrea Seicean, M.D., noted that Plaintiff had a difficult time remembering questions she was asked. (Tr. 1168.) Plaintiff needed reminders to take her medication, manage her personal needs, groom, and finish household tasks. (Tr. 240, 281.)

Plaintiff contends that if the ALJ did not agree that Plaintiff needed frequent reminders throughout the day, she was required to identify the evidence that supported her conclusion that Plaintiff required only one reminder. SSR 98-p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion[.]"). The ALJ referenced a Third Party Function Report completed by Plaintiff's friend, PD: "[T]o account for the limitations reported by [PD], the undersigned finds that the claimant would require one reminder per day to

17

perform tasks[.]" (Tr. 659.) However, the ALJ offered no explanation for this conclusion at all. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (reiterating that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

The Commissioner does not address this argument directly. The Commissioner has failed to identify any part of the ALJ's decision that reflects a proper explanation for her conclusion that Plaintiff required only one reminder during the workday. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (reiterating that ALJs must build an "accurate and logical bridge" from the evidence to their conclusions). Remand is warranted on this issue.

Next, Plaintiff agues that the ALJ failed to properly assess her subjective symptoms. The ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were inconsistent with her "course and pattern of care," which showed that she "routinely presented to the emergency room with complaints of depression and suicidal ideations, but failed to receive regular psychiatric treatment." (Tr. 654.) However, in previously remanding the case, this Court held that the ALJ erred by failing to consider the reasons for the lack of regular treatment. (Tr. 764.) The record reflects that Plaintiff did not always have health insurance and struggled financially. (Tr. 57, 241-42, 399, 451, 465.) Contrary to the instruction from this Court, the ALJ here did not articulate any consideration of the many reasons that Plaintiff may not have been able to regularly receive treatment. *See Roddy v. Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013) (reversing where the ALJ failed to question the claimant about reasons for gaps in treatment).

As Plaintiff notes, the ALJ's own language reflects that she relied explicitly on Plaintiff's failure to pursue regular psychiatric treatment to find that her statements about her symptoms

18

were inconsistent with the record. (Tr. 654.) The Commissioner has not identified any portion of the ALJ's decision that shows that the ALJ adequately assessed the reasons that Plaintiff was unable to pursue regular treatment. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Thomas v. Colvin*, 543 Fed.Appx. 546, 552 (7th Cir. 2013) ("[A]n ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms."). Remand is required on this issue.

The ALJ also found that Plaintiff was sometimes noncompliant with recommended treatment. (Tr. 654.) Plaintiff argues that the ALJ did not explore any reasons for this noncompliance, as she was required to do. *See* SSR 16-3p; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Plaintiff points out that she lacked financial resources (Tr. 57, 241-42) and suffers from bipolar disorder. (Tr. 1167.) "ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medications supports an adverse credibility inference." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). *See also Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.") (internal citations omitted).

The Commissioner asserts that the ALJ did not rely "solely" on Plaintiff's non-compliance with treatment in finding that her statements were inconsistent with the record. The Commissioner cites generally to the multiple pages of the ALJ's decision and argues that the ALJ also considered Plaintiff's statements, her treatment history, use of medication, and daily activities. (Tr. 653-59.) However, the Commissioner has not shown that the ALJ's assessment of these other factors was adequate. It is clear that the ALJ failed to explore the reasons that Plaintiff

19

may have failed to pursue regular treatment or comply with recommend treatment. Thus, the Court will remand on these issues.

The ALJ also found that Plaintiff's statements about her symptoms were inconsistent with evidence that "she engaged in several activities of daily living." (Tr. 653.) The ALJ did not identify which activities of daily living were inconsistent with Plaintiff's statements, or explain how they were inconsistent, as she was required to do. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Moreover, the ALJ did not acknowledge if, or how, she considered that Plaintiff could perform her activities when her symptoms were less severe, with as many breaks as she wanted, with assistance from others, and without having to meet workplace standards. Plaintiff would not be afforded such flexibility in the workplace. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). *See also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office."). Thus, remand is warranted on this issue as well.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: November 12, 2021.

    s/ William C. Lee
    William C. Lee, Judge
    United States District Court